**Opinion issued July 19, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00863-CR

————————————

**BILLY GASTON YOUNG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 117th District Court**
**Harris County, Texas**
**Trial Court Case No. 1512286**

---

## MEMORANDUM OPINION

Appellant, Billy Gaston Young, pleaded guilty to continuous sexual abuse of

a young child,[1] and the trial court assessed punishment at 30 years' confinement. In

his sole issue on appeal, appellant contends that the trial court erred in denying his

---

[1]     TEX. PENAL CODE § 21.02 (West 2011 & Supp. 2017).

motion to suppress, claiming that, because the cell phone that provided the evidence leading to his arrest had been stolen by a third party, both his confession and the SD cards discovered after his arrest were "fruit of the poisonous tree."

We affirm.

## BACKGROUND

When a Cricket Wireless employee began transferring files on Jamaul Langham's phone, she saw images of the apparent sexual assault of a minor by an adult male. Jamaul allowed the employee to copy the images onto a USB drive and call the police, but he kept the cell phone. After Sergeant Jones was assigned the case, she viewed the files on the USB drive, which showed an adult man (later identified as appellant) sexually assaulting two girls (later identified as sixteen-year-old A.G. and eleven-year-old H.G). Jones printed pictures of the three for identification purposes. She then called Jamaul, who still had the cell phone, and asked to meet with him.

Jamaul told Jones that a seventeen-year-old male living in the Sugar Branch Apartments sold him the phone for $100. Although he told Jones the seller's first name, he had no further information. Jamaul gave Jones written consent to search the phone. He also recognized the man in the images as appellant, the Sugar Branch Apartments' maintenance man.

Jones drove to the apartments, where she recognized appellant in the parking lot. Jones showed pictures of appellant, A.G., and H.G. to the apartment manager, who identified appellant as the maintenance man and the girls as children of one of the residents. Jones confirmed that A.G. and H.G. were minors.

After speaking to the girls' mother, Jones picked the girls up from school to meet with a forensic interviewer. When the interviewer asked H.G. about the abuse, H.G. began crying and was unresponsive. But, when the interviewer asked A.G. about the abuse, A.G. stated that she knew appellant and that he had touched and taken photos of her naked body. After the interview, Jones told A.G. about the images, and A.G. admitted to having sex with appellant on many occasions.

Jones obtained an arrest warrant for appellant. Houston Police Department (HPD) officers awakened appellant around 10 p.m. and entered his apartment when he opened the door. The HPD officers arrested appellant, handcuffed him, and placed him in the back of their car. About twenty minutes later, Jones arrived and spoke with appellant. She asked for consent to search the apartment, which appellant granted both verbally and in writing. Jones seized eleven SD cards, which were wrapped in pieces of paper labeled with girls' names, from a Mentos tin in appellant's apartment. Jones obtained a search warrant before viewing the files on the SD cards.

Jones then took appellant to the police station and read him his statutory rights. Appellant stated that he understood his rights, agreed to waive them, and spoke with Jones. During the interview, appellant claimed that his phone had been stolen. He ultimately confessed to sexually abusing A.G. and H.G.

## SUPPRESSION OF EVIDENCE

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress evidence. Specifically, he claims that, because the cell phone containing the photos of him with A.G. and H.G. had been stolen by a third party, all subsequent evidence should be considered "fruit of the poisonous tree" and suppressed because of article 38.23 of the Texas Code of Criminal Procedure.

### *Applicable Principles of Law*

The Texas exclusionary rule found in article 38.23(a) provides:

No evidence obtained by an officer *or other person* in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. . . .

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018) (emphasis added).

Article 38.23 is "broader than its federal counterpart." *Miles v. State*, 241 S.W.3d 28, 34 (Tex. Crim. App. 2007). The Fourth Amendment (as well as article I, section 9 of the Texas Constitution) applies only to government action; it does not extend to the conduct of private citizens. *See Tin Man Lee v. State*, 773 S.W.2d 47, 48 (Tex. App.—Houston [1st Dist.] 1989, no pet.) In contrast, article 38.23 applies

4

to illegal searches or seizures conducted by law enforcement officers or "other persons," even when those private individuals are not acting in conjunction with, or at the request of, government officials. *Miles*, 241 S.W.3d at 36. The Court of Criminal Appeals stated that the "plain language" of article 38.23 leads to this "inescapable conclusion":

> [I]f an officer violates a person's privacy rights by his illegal conduct making the fruits of his search or seizure inadmissible in a criminal proceeding under Article 38.23, that same illegal conduct undertaken by an "other person" is also subject to the Texas exclusionary rule. If the police cannot search or seize, then neither can the private citizen.

*Id.* (footnote omitted).

A defendant challenging the admissibility of evidence as a violation of article 38.23(a) bears the legal burden of establishing that the evidence was obtained in violation of the law. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). When moving to suppress evidence after an alleged article 38.23(a) violation, the defendant bears the burden of producing evidence of the violation of law. *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). "Only when this burden is met does the State bear a burden to prove compliance" with the law. *Id.* However, the ultimate burden of persuasion is "properly and permanently placed upon the shoulders of the moving party." *Pham v. State*, 175 S.W.3d 767, 773 (Tex. Crim. App. 2005) (internal quotation omitted). "'When a criminal defendant claims the right to protection under

5

an exclusionary rule of evidence, it is his task to prove his case.'" *Id.* (quoting *Mattei v. State*, 455 S.W.2d 761, 766 (Tex. Crim. App. 1970)).

### *Standard of Review*

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony, even if that testimony is not controverted. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When, as here, the trial court does not make findings of fact, we assume that the trial court made implicit findings that support its ruling, provided those implied findings are supported by the record. *Sims v. State*, 84 S.W.3d 805, 807–08 (Tex. App.—Houston [1st Dist.] 2002, no pet.). We view the evidence in the light that most favors the trial court's ruling, and we uphold the ruling on any theory of law supported by the evidence. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App.

6

2005); *Brown v. State*, 212 S.W.3d 851, 867 (Tex. App.—Houston [1st Dist.] 2006, pet ref'd).

*Analysis*

Appellant claimed that his phone had been stolen. He testified that, while working on a light fixture in apartment 289, he set the phone down on the counter and "when [he] got back, the phone was gone, and the kid [who lived in the apartment] was gone." He claimed that he called the police to make a report about the stolen phone and then went to purchase another. When asked whether he knew what had happened to his phone or where it went, appellant replied, "I have no idea." He also said that the young man in apartment 289 said that he would get the phone back by the end of the day. In contrast, when Sergeant Jones interviewed appellant at the police station, he denied reporting the theft.

Jamaul, who took the phone to the Cricket Wireless store, told Jones that he had purchased the phone for $100. Based on the conflicting evidence, the phone might have been stolen, or it might have been sold or given away,[2] lost and

---

[2]    *See Grant v. State*, 531 S.W.3d 898 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (holding that, although defendant purchased cell phone, he no longer owned it at the time it was stolen, thus article 38.23 did not apply).

7

abandoned,[3] or improperly disposed of[4] by appellant. Perhaps appellant sold the phone to someone, but neglected to delete the images. We are not in a position to determine appellant's credibility—that is the sole province of the trial court. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). So, we must view the evidence[5] in the light most favorable to the trial court's ruling. *See Ross*, 32 S.W.3d at 855. The trial court may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. *Id.*

Because the trial court was entitled to believe Jamaul's statement to police that he lawfully bought the phone and disbelieve appellant's testimony that the phone was stolen, the trial court did not abuse its discretion in concluding that

---

[3] *See Lopez v. State*, 512 S.W.3d 416 (Tex. App.—Corpus Christi 2016, no pet.) (holding that appellant abandoned phone and had no standing to object to evidence retrieved from it when he forgot device at workplace, but never requested that it be returned to him).

[4] *See Jackson v. State*, 717 S.W.2d 713, 715 (Tex. App—San Antonio 1986, pet. ref'd) (stating that article 38.23 applies to illegally obtained evidence, not improperly disposed of evidence).

[5] During the suppression hearing, the following evidence was presented: (1) the testimony of Sergeant Jones, (2) the testimony of appellant, (3) the arrest warrant, (4) appellant's voluntary consent-to-search form, (5) the search warrant for the SD cards, (6) the interview between Sergeant Jones and appellant, (7) a drawing by appellant during the interview of how far he penetrated H.G., (8) Jamaul's voluntary consent-to-search form for the cell phone, (9) a photograph of various pictures of H.G. on appellant's living room mirror, (10) a photograph of the SD cards and Mentos tin, and (10) a photograph of appellant's apartment door.

appellant had not carried his burden to show a violation of the law as required by article 38.23.

Thus, we overrule appellant's sole point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).